## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JUNE MURPHY, individually and behalf of all
other similarly situated persons,

       **Plaintiffs,**

v.

**NORTHERN DUTCHESS PARAMEDICS,
INC., and EDWARD B. MURRAY,**

       **Defendants.**

**11CV5661 (LMS)**

## ORDER GRANTING PLAINTIFFS' NOTICE OF MOTION FOR FINAL APPROVAL
## OF CLASS SETTLEMENT AND NOTICE OF MOTION
## FOR FINAL APPROVAL OF CLASS COUNSEL'S FEES AND COSTS

Plaintiff June Murphy, the opt-ins, and Rule 23 Class Members (collectively "Plaintiffs") are current and former employees of Defendants who worked as EMTs and Paramedics. On August 15, 2011, Plaintiff June Murphy filed this lawsuit alleging that Defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by not paying EMTs and Paramedics for all of their pre- and post-shift work, and that Defendants employed an illegal rounding practice that resulted in underpayment to Plaintiffs for all hours worked. Declaration of Dan Getman in Support of Plaintiffs' Notice of Motion for Final Approval of Class Counsel's Fees and Costs ("Getman Dec."), ¶ 4, Doc. 98. On December 19, 2012 Judge Seibel conditionally certified a collective action on the FLSA claim and class action on their NYLL claims pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). *Id.* at ¶ 15. On October 23, 2012, Class Counsel also filed an Amended Complaint. *Id.*

During the past thirty-five months, the Parties engaged in numerous settlement discussions. Class Counsel, Defense Counsel, and Defendant Edward Murray attended all of the settlement discussions. Initially, in January 2012, the Parties agreed to try to resolve the case on a class-wide basis. Between January 2012 and August 2012 the Parties held numerous telephone conferences to discuss the information that Class Counsel needed to create accurate damages calculations, and the Parties exchanged documents. After Class Counsel reconciled the various complex data discrepancies and completed the wage and hour data entry, Class Counsel prepared and gave Defendants a comprehensive damages analysis. The damages analysis was repeatedly updated to reflect more accurate information as it was received from Defendants. Along the way, the Parties reported to the Court the status of ongoing negotiations. The Parties held two in-person settlement conferences on May 30, 2012 and July 31, 2012. The bilateral negotiations were unsuccessful. *Id.* at ¶ 16.

After the Parties continued discovery and as the discovery period was coming to a close, the Parties agreed to engage in settlement conversation with the assistance of this Court. The first meeting occurred on December 3, 2013. While the Parties made some progress, the conference did not end in settlement. During that conference, Class Counsel requested that this Court order Mr. Latimer, NDP's non-performing 50 percent owner, to appear at the next settlement conference. An Order was issued and Class Counsel served the Order on Mr. Latimer. On January 22, 2014, the Parties, including with Mr. Latimer, appeared for a second settlement conference with this Court. During the second settlement conference, the Parties agreed to settlement terms, which was placed on the record and ultimately memorialized in the Settlement Agreement. *Id.* at ¶ 18.

On May 23, 2014, this Court entered an Order preliminarily approving the settlement. On May 23 and May 26, 2014, Class Counsel sent Court-approved notices to all Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement, and of Class Counsel's intention to seek attorneys' fees from the settlement. On July 10, 2014, Class Counsel mailed a reminder letter to 205 Class Members who had not responded to the initial mailing by either returning a claim form or opt-out request. No Class Members objected to the settlement, and only two Class Members have filed opt-out requests. Two Class Members contested their settlement amount based on the information provided in their Notice. Declaration of Matt Dunn in Support of Notice of Motion for Final Approval of Class Settlement ("Dunn Dec."), Doc. 100, ¶ 9.

On August 3, 2014, Plaintiffs filed an amended Notice of Motion for Final Approval of Class Settlement. Doc. 94. The same day, Plaintiffs also filed an amended Notice of Motion for Final Approval of Class Counsel's Fees and Costs. Doc. 96. Defendants took no position with respect to any of these motions and did not object to the requests for attorneys' fees or costs.

The Court held a fairness hearing on August 1, 2014. No Class Member appeared or objected to the settlement at the hearing. Out of 273 Class Members, 109 had returned a claim form. Declaration of Matt Dunn in Support of Notice of Motion for Final Approval of Class Counsel's Fees and Costs, Doc. 99, ¶ 4.

Having considered the Plaintiffs' motions, the lack of objections at the August 1, 2014 fairness hearing, and the complete record in this matter, for the reasons set forth therein and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**APPROVAL OF THE SETTLEMENT AGREEMENT**

1.  The Court hereby grants the Notice of Motion for Final Approval of Class Settlement, Doc. 94, and finally approves the settlement as set forth in the Settlement Agreement.

2.  Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed.R.Civ.P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. See *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.2005). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974).

3.  Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Flores v. Anjost Corp.*, 11 Civ. 1531(AT), 2014 WL 321831, *4 (S.D.N.Y. Jan. 29, 2014) *citing Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

4.  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal- Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Flores*, 2014 WL 321831, at *4.

5.  The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. See Fed.R.Civ.P. 23(e); *Flores*, 2014 WL 321831, at *4. The settlement was reached after the Parties had conducted a thorough investigation and evaluated the claims and defenses, after extensive litigation and formal discovery, and after arm's-length negotiations between

the Parties. Declaration of Matt Dunn in Support of Plaintiffs' Notice of Motion for Preliminary Approval of Class Settlement and Approval of Plaintiffs' Proposed Notice of Settlement, ¶ 12, Doc. 78. These arm's-length negotiations involved counsel and this Court, and raise a presumption that the settlement achieved satisfies the due process requirements. See *Wal–Mart Stores*, 396 F.3d at 116; *Flores*, 2014 WL 321831, at *4.

6.  The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

7.  The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell Corp.*, 495 F.2d at 463.

8.  Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

9.  The Class's reaction to the settlement was positive. Over 39% of the Class returned a claim form and will receive their settlement share. No Class Member objected to the settlement. Less than one percent of the Class opted out of the action. Only two Class Members disputed their estimated settlement payout. Both of their claims were resolved. Dunn Dec. ¶¶ 8-11. This favorable response demonstrates that the Class approves of the settlement

and supports final approval. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern,* 553 F. Supp. 2d 337, 344–45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *Bellifemine v. Sanofi–Aventis U.S. LLC,* 07 Civ. 2207, 2010 WL 3119374, *3 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections and 28 of 5,262 opted out). Thus, this second *Grinnell* factor weighs in favor of final approval.

10. The Parties have completed more than sufficient discovery to recommend settlement. "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Flores,* 2014 WL 321831, at *5; *see also In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 537 (3d Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 176      (S.D.N.Y. 2000) (internal quotations omitted). Here, the Parties have engaged in substantial discovery. Specifically, Class Counsel interviewed current and former EMTs and Paramedics to gather information relevant to the claims in the litigation; took a 30(b)(6) deposition over two days, prepared to defend the Named Plaintiff's deposition, obtained, reviewed, and analyzed thousands of pages of hard-copy documents and electronically-stored data including, but not limited to, time and payroll records, human resources documents and employee personnel files. Class Counsel reviewed and keyed in thousands of time cards. Class Counsel also developed a representative sample to establish Defendants' violation of the law and Plaintiffs' damages arising therefrom, responded to discovery requests, thoroughly analyzed Defendants'

financial records, tax returns, and assets (including obtaining independent review by a forensic accountant), and held settlement discussions and informal conversations with Defendants concerning their pay practices and records. Dunn Dec. ¶ 28, Doc. 78. Discovery here was "an aggressive effort" to litigate the case. *See Flores*, 2014 WL 321831, at *5. Class Counsel is in a position to fully understand the claims, the defenses, the litigation risks of going forward, and the likelihood of having any judgment remain unpaid. The third *Grinnell* factor weighs in favor of final approval.

11.   The risk of establishing liability and damages further weighs in favor of final approval. In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). Here, Plaintiffs face numerous risks as to both liability and damages. For example, Defendants may establish that their rounding practices comply with both the FLSA and NYLL and thus Class Members are not due any damages. Defendants may also establish that Class Members did not work pre- and post-shift, but instead were engaging in non-work activities such as sleeping. Dunn Dec. ¶ 29, Doc. 78. Defendants may also avoid liquidated damages because they claimed to rely on advice from a New York Department Labor representative. The proposed settlement eliminates this uncertainty. Thus, the fourth and fifth *Grinnell* factors weigh in favor of final approval.

12.   The risk of maintaining collective and class certification through trial is also present. While the Court has ordered that the Class should be maintained for trial for some of the Plaintiffs' claims, establishing damages at trial on a class-wide basis on such claims is a difficult endeavor that poses risks given the nature of the time and payroll records, and the inherent

difficulty of using representational testimony at trial. Moreover, Defendants could file a motion to decertify the FLSA class and the Rule 23 New York Labor Law Class. The Court could decertify the Class. Dunn Dec. ¶ 30, Doc. 78. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The sixth *Grinnell* factor weighs in favor of final approval.

13.   There is evidence here that Defendants could not withstand a greater judgment. Defendants agreed to pay the settlement amount in four installments over three years, and disclosed financial information to Class Counsel during discovery and settlement that demonstrated a substantial risk of collection. Dunn Dec. ¶ 26, Doc. 78. Even if the Defendants can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Accordingly, the seventh *Grinnell* factor weighs strongly in favor of approving the settlement.

14.   The substantial amount of the settlement, in light of the best possible recovery and the attendant risks of litigation, weighs in favor of final approval. "The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186, *citing In re Austrian*, 80 F.Supp.2d at 178 and *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Flores*, 2014 WL 321831, at *6. Here, participating Class Members will receive 100% of their total

estimated damages after discounts for litigation risks and 63% of their total estimated damages, which is a significant recovery. Dunn Dec. ¶ 17. The actual amount that each Class Member will receive is based on that Class Member's wage and hour records, the Member's length of employment with Defendants, as well as job status as a full time, part time, or per diem employee. *See*, Exhibit 4 to Dunn Dec., Doc. 78-4. These eighth and ninth *Grinnell* factors also weigh in favor of final approval.

15. The Court finds reasonable the service payment of $10,000 to the Named Plaintiff Murphy as provided in the Settlement Agreement. Named Plaintiff June Murphy was integral in initiating this collective and class action and made significant contributions to the prosecution of the litigation. Dunn Dec. ¶ 12. The Named Plaintiff took risks that the opt-in Plaintiffs and Class Members did not. *Id.* at ¶ 13.

16. Service payments "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Yuzary v. HSBC Bank USA, N.A.*, 12 Civ. 3693 PGG, 2013 WL 5492998, *12 (S.D.N.Y. Oct. 2, 2013) (quoting *McMahon v. Olivier Cheng Catering & Events, LLC*, 08 Civ. 8713, 2010 WL 2399328, *9 (S.D.N.Y. Mar. 3, 2010)) (internal quotation marks omitted). "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Yuzary*, 2013 WL 5492998, at *12 (citing *Massiah v. MetroPlus Health Plan, Inc.*, 11 Civ. 5669, 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012)). The award requested here is also within the range of service payments in this District. See, *Henry v. Little Mint, Inc.*, 12 Civ. 3996 CM, 2014 WL 2199427, **4, 17 (S.D.N.Y. May 23, 2014) (approving service award up to $10,000 in FLSA and NYLL case); *Flores*, 2014 WL 321831, at *9-*10 (approving

$25,000 service payment); *In re Penthouse Executive Club Compensation Litigation*, 10 Civ. 1145(KMW), 2014 WL 185628, *12 (S.D.N.Y. Jan. 14, 2014) (approving $15,000 service payment to each of the Named Plaintiffs); *Sewell v. Bovis Lend Lease, Inc.*, 09 Civ. 6548 RLE, 2012 WL 1320124, *14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); *Reyes v. Altamarea Grp., LLC*, 10 Civ. 6451 RLE, 2011 WL 4599822, *9 (S.D.N.Y. Aug. 16, 2011) (approving service payments of $15,000 to three class representatives).

**APPROVAL OF THE FLSA SETTLEMENT**

17.   The Court hereby approves the FLSA settlement.

18.   In order to approve a settlement of an FLSA suit, a court must determine that (1) the settlement involves the resolution of a bona fide dispute over an FLSA provision and (2) the settlement is fair and reasonable. *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1356 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)). If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement. *Id.* "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

19.   Here, the settlement was the result of arm's-length negotiations involving numerous discussions over two years. The claims were finally resolved with the assistance of this Court. Further, the Parties' had the assistance of attorneys experienced in wage and hour law. Thus, the Settlement Agreement resolves a bona fide dispute under circumstances supporting a finding that is fair and reasonable.

**DISSEMINATION OF NOTICE**

20.   Pursuant to the Preliminary Approval Order, the Notices were sent by first-class mail to each respective Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located). In addition, Class Counsel mailed a reminder letter to Class Members who had not returned a claim form or opted-out. The Court finds that the Notices, coupled with the reminder letter, fairly and adequately advised Class Members of the terms of the settlement, as well as the right to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on August 1, 2014. Dunn Dec. ¶¶ 4-7. Class Members were provided with the best notice practicable under the circumstances.

21.   The Court further finds that the Notices and their distribution comported with all constitutional requirements, including those of due process.

**AWARD OF FEES TO CLASS COUNSEL**

22.   The Court hereby grants the Plaintiffs' Notice of Motion for Final Approval of Class Counsel's Fees and Costs and finds Class Counsel's fee request reasonable. Doc. 96

23.   The Court finds that the Named Plaintiff and opt-in Plaintiffs agreed to pay Class Counsel their hourly rate. The Named Plaintiff specifically agreed in her individually negotiated retainer, that Class Counsel would recover up to one-third of the gross settlement, or counsel's hourly rate, whichever was greater, plus litigation costs. Getman Dec. ¶ 73. Similarly, the opt-in Plaintiffs agreed to pay Class Counsel's fees in the consent to sue forms that each of the opt-in Plaintiffs signed and submitted to the Court. *See e.g.,* Doc. 44-1.

24.   In accordance with the numerous agreed-upon provisions an award of $212,854.25 in attorneys' fees is appropriate.

25.    The Court also awards Class Counsel's fees under the lodestar analysis.

.26.    In FLSA and NYLL cases, a successful plaintiff is entitled to reasonable attorneys' fees
and costs. 29 U.S.C. § 216(b); NYLL § 198(1–a), § 663(1). Where a statute awards a
prevailing plaintiff "reasonable attorneys' fees", both the Second Circuit and the Supreme
Court "have held that the lodestar—the product of a reasonable hourly rate and the
reasonable number of hours required by the case—creates a 'presumptively reasonable
fee." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *citing Perdue v.
Kenny A. ex rel. Winn*, 130 S.Ct. 1662, 1673 (2010); *see also Morocho v. Eddie*, 12 Civ.
0308 (VB) (LMS), Doc. 100, p. 13 (S.D.N.Y. Dec. 10, 2012). In order to calculate the
lodestar, the number of hours spent on the case by each counsel is multiplied by the
reasonable hourly rate for that attorney. *City of Providence v. Aeropostale, Inc.*, 11 Civ.
7132 CM GWG, 2014 WL 1883494, *13 (S.D.N.Y. May 9, 2014). While a court may
adjust the lodestar in extraordinary circumstances, it should be careful not to do so to
account for factors already part of the lodestar analysis. *Millea*, 658 F.3d at 167-68.

27.    The party seeking fees has the burden of establishing that the hours billed are reasonable.
*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "The court's role is not to determine
whether the number of hours worked by ... attorneys represents the most efficient use of
resources, but rather whether the number is reasonable." *In re Arbitration Between P.M.I.
Trading Ltd. v. Farstad Oil, Inc.*, 160 F.Supp.2d 613, 616 (S.D.N.Y. 2001). Attorneys
seeking fees must provide the court with "contemporaneous time records that show for
each attorney the date, the hours expended, and the nature of the work done." *Ontel
Products Corp. v. Amico International Corp.*, 07 Civ. 7356, 2008 WL 4200164, *5
(S.D.N.Y. Aug. 19, 2008) (internal quotation marks omitted); *see also Scott v. City of New*

*York*, 643 F.3d 56, 58 (2d Cir. 2011). Where the "work performed by counsel [is] relevant and productive, and not duplicative" counsel is entitled to reimbursement for it. *Id.* As the Ninth Circuit noted "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he [or she] was required to spend on the case; after all, he [or she] won, and might not have, had he [or she] been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Thus, there is a presumption that the number of hours an attorney spends on a case is reasonable. *Thornhill v. CVS Pharm., Inc.*, 13 Civ. 5507 JMF, 2014 WL 1100135, *6 (S.D.N.Y. March 20, 2014).

28.   Here, the number of hours Class Counsel billed is reasonable. Class Counsel has submitted contemporaneous time records showing the number of hours spent litigating this case. This time included: briefing the FLSA conditional certification and NYLL class certification motion; thoroughly reviewing Defendants' financial records; serving document demands, requests to admit, and interrogatory requests; reviewing Defendants' document production; preparing for and taking a 30(b)(6) deposition; speaking with Class Members and the Named Plaintiff about the facts of the case; analyzing Defendants' rounding practices; resolving inconsistencies in the data production; calculating damages based on representative sample; and engaging in numerous settlement discussions. Because Defendants produced records of the hours worked and the class list in paper format, Class Counsel was required to perform extensive additional work inputting information and reconciling extensively disparate non-conforming data sets. The time records required careful scrutiny because they were of poor copy production and the handwritten time entries were difficult to interpret. Class Counsel also created a representative sample that was based on a statistical analysis in preparation for trial to make the process more efficient.

Class Counsel spent many hours preparing for and engaging in numerous settlement discussions over the past three years. *See,* Getman Dec. ¶¶ 4-20, 23

29.   A fee award also needs to reflect time that counsel will spend administering the settlement in the future. *Johnson v. Brennan*, 10 Civ. 4712 CM, 2011 WL 4357376, *16 (S.D.N.Y. Sept. 16, 2011). Class Counsel will spend additional time over the next two and one-half years administering the settlement.

30.   Class Counsel reduced their billings by 46%, or over 600 hours, out of more than 1,500 hours. *See,* Getman Dec. ¶ 23. This reduction allows Class Members to recover 100% of their damages, after a reduction for litigation risks, and double the amount they were informed they would receive in their individual notices.

31.   Thus, Class Counsel's contemporaneous time records establish the reasonable hours worked on this matter.

32.   Class Counsel's hourly rates are also reasonable.

33.   The reasonable hourly rate is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). The party seeking attorneys' fees has the burden of establishing "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *J.S. ex rel. Z.S. v. Carmel Central School Dist.*, 7:10 Civ. 8021 (VB), 2011 WL 3251801, 4 (S.D.N.Y. July 26, 2011). "In determining the reasonable hourly rates to be applied, courts should look to the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. The relevant community to which the court should look is the district in which the case was

brought. To compensate for the delay in payment, the hourly rates to be used should be current rather than historic hourly rates." *Rosado v. City of New York*, 11 Civ. 4285, 2012 WL 955510, *4 (S.D.N.Y. March 15, 2012) (citations and quotations omitted).

34.   Class Counsel's rates are reasonable and appropriate for use in the lodestar calculation.

35.   Class Counsel's rates are the firm's regular billing rates. Getman Dec. ¶ 71.

36.   Class Counsel has extensive experience in litigating wage and hour collective and class actions. Numerous courts have recognized Class Counsel's extensive experience in successfully litigating wage and hour cases. *See e.g.*, *Driscoll v. The George Washington University*, 1:12 Civ. 00690-ESH, Doc. 98, p. 18 (D.D.C. July 17, 2014) ("the Court is satisfied that plaintiffs' counsel has extensive experience based on the findings by 'other district courts around the country [that] have recognized, [the firm's] experience and skill in prosecuting wage-and-hour class litigation.'") (citations and quotations omitted); *Morangelli v. Chemed Corp.*, 1:10 Civ. 00876-BMC, Doc. 292, p. 15 (E.D.N.Y. Jan. 7, 2014) ("Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage-and-hour law and in class action law.") *citing Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 119 (E.D.N.Y. 2011) (finding Getman & Sweeney to have "stellar" qualifications as class counsel in wage-and-hour class litigation); *Brumley v. Camin Cargo Control, Inc.*, 08 Civ. 1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) ("Both this Court and other district courts around the country have recognized Plaintiffs' counsel's experience and skill in prosecuting wage-and-hour class litigation."); *Lewis v. Alert Ambulette Serv. Corp.*, 11 Civ. 442, 2012 WL 170049, *15 (E.D.N.Y. Jan. 19, 2012) ("[Getman & Sweeney] has brought to bear its considerable experience in handling class actions, and other complex litigation,

particularly claims of the type asserted in the present action"); *Bredbenner v. Liberty Travel, Inc.*, Nos. 09–905 (MF), 09–1248(MF), 09–4587(MF), 2011 WL 1344745, *7 and *20 (D.N.J. April 8, 2011) (finding Getman & Sweeney highly experienced and competent in wage-and-hour litigation); *Salazar-Martinez v. Fowler Bros. Farm*, 10 Civ. 6257 (W.D.N.Y. Sept. 14, 2012)(awarding Getman Sweeney out of district rates based on "high level of experience").

37.     District Courts throughout the country, including in this District, have regularly approved Class Counsel's customary rates. *See e.g. Smith v. Nagai*, 1:10 Civ. 08237 (PAE) (JCF), Doc. 35, p. 15 (S.D.N.Y. May 5, 2012) (approving Class Counsel 2012 rates for: Dan Getman at $550; Michael J.D. Sweeney at $440; Matt Dunn at $310; Mike Russo at $195; paralegals at $135; and clerical at $50.); *Morocho v. Eddie*, 12 Civ. 0308 (VB) (LMS), Doc. 100, pp. 15-17 (S.D.N.Y. Dec. 10, 2012) (report and recommendation approving Getman & Sweeney's 2012 rates for: Michael J.D. Sweeney at $440, Artemio Guerra at $225, paralegals at $135, and clerical work at $50); *Driscoll v. The George Washington University*, 1:12 Civ. 00690-ESH, Doc. 98, p. 23 (D.D.C. July 17, 2014) (approving Getman & Sweeney rates based on the Laffey Matrix); *Morangelli v. Roto-Rooter Services Com.*, 1:10 Civ. 00876-BMC, Doc. 292, p. 9 (E.D.N.Y. Jan. 7, 2014) (awarding counsel fee request based on the percentage of the fund method)*; Salazar-Martinez v. Fowler Bros., Inc.*, 10 Civ. 6257, 2012 WL 4062582 (W.D.N.Y. Sept. 14, 2012); *Habenicht v. Keycorp*, 11 Civ. 02619, Doc. 37 (N.D.Ohio Oct. 19, 2012); *Brumley v. Camin Cargo Controls, Inc.*, 2:08 Civ. 01798-JLL-MAH, Doc. No. 234 (D.N.J. Mar. 26, 2012).

38.     Class Counsel's billing rates are in line with the rates approved in this District and the rates charged by wage and hour firms in New York City. *See, Clark v. Ecolab, Inc.*, 1:07 Civ.

08623-PAC, Doc. 101, p. 4, ¶ 11 (S.D.N.Y. April 27, 2010) (In 2010 Outten & Golden LLP's "rates range[d] from $475 to $900 per partner's hour, [ ] $225 to $350 per associate's hour, $195 per law clerk's hour, and $140 to $175 per paralegal's hour."). This District has generally approved comparable hourly rates for attorneys with similar experience to counsel in this case. *See, Guallpa v. N.Y. Pro Signs Inc.*, 11 Civ. 3133 LGS FM, 2014 WL 2200393, *10 (S.D.N.Y. May 27, 2014) ($600 for a partner who graduated from law school in 1995; $350 for an associate who graduated from law school in 2006); *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225 (S.D.N.Y. 2011) (awarding $625 per hour for an experienced civil rights attorney based on evidence that the rate was "well within the range of hourly rates for attorneys in civil rights cases in the Southern District and Washington, D.C., area"); *Viafara v. MCIZ Corp.*, 12 Civ. 7452 RLE, 2014 WL 1777438, *14 (S.D.N.Y. May 1, 2014) ($550 for partner, $350 for an associate, $175 for a first year associate); *Benavidez v. Plaza Mexico, Inc.*, 09 Civ. 5076 KNF, 2014 WL 1133446, *16 (S.D.N.Y. March 21, 2014) (approving reduced hourly rate of $500 for a partner); *Asare v. Change Group of New York, Inc.*, 12 Civ. 3371 CM, 2013 WL 6144764, *19 (S.D.N.Y. Nov. 18, 2013) (finding that counsel's rates were reasonable; the rates included $750 per hour for partner time, $500 per hour for senior associate time, and $300 per hour for associate time). Class Counsel's rates have also historically been consonant with the rates then applicable. *See e.g. Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011) ($550 per hour rate in FLSA case to be reasonable); *Velez v. Novartis Pharm. Corp.*, 04 Civ. 09194, 2010 WL 4877852, *22 (S.D.N.Y. Nov. 30, 2010) (accepting hourly rates of $400 to $750 per hour for lodestar crosscheck and noting that the rates were "below the rates charged by firms of [its] caliber (principally defense firms) that litigate frequently in th[e] [Southern] District");

*Rozell v. Ross-Holst*, 576 F.Supp.2d 527, 546 (S.D.N.Y. 2008) (awarding $600 per hour for partner and of counsel and between $250 and $350 for associates in an employment discrimination case).

39. Courts in this District also regularly approve non-attorney rates comparable to Getman & Sweeney's. Paralegal rates of $150 an hour and more are common in this District. *Demonchaux v. Unitedhealthcare Oxford*, 10 Civ. 4491 DAB, 2014 WL 1273772 (S.D.N.Y. 2014) ($175.00 and $200.00 per hour for paralegal services were reasonable); *Asare v. Change Group of New York, Inc.*, 12 Civ. 3371 CM, 2013 WL 6144764, *19 (S.D.N.Y. Nov. 18, 2013) ($150 per hour for paralegal/staff time reasonable; *Allende v. Unitech Design, Inc.*, 783 F.Supp.2d 509, 515 (S.D.N.Y. 2011) (awarding paralegal rates of $150); *N.Y.C. Dist. Council of Carpenters Pension Fund v. Quantum Constr.*, 06 Civ. 13150, 2008 WL 5159777, *13 (S.D.N.Y. Dec. 9, 2008) (awarding $150 per hour for paralegals in an ERISA default judgment case and noting that the rates awarded were "commensurate with those generally charged for similar work in this district"); *N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F.Supp.2d 410, 424 (S.D.N.Y. 2009) (awarding $150 per hour for paralegals).

40. Courts also recognize that higher rates are reasonable for specialized functions, particularly in the information technology. Rates of $195 and more for an IT specialist are reasonable in this District. *See National Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG*, 04 Civ. 2983 (DLC)(KNF), 2006 WL 5804603, *6 (S.D.N.Y. Dec. 11, 2006) (awarding rates of $200 for paralegals with specialized knowledge). Finally, a clerical rate of $85 is appropriate for work not requiring paralegal skills. *See, e.g., Saunders v. City of New York, Inc.*, 07 Civ. 830(SAS), 2009 WL 4729948 (S.D.N.Y. Dec. 9, 2009) (adjusting

paralegal rates to $75 per hour for clerical work); *Am. Civ. Liberties Union of Florida, Inc. v. Dixie County Fla.,* 1:07 Civ. 18-MP-GRJ, 2012 WL 1004372, *2 (N.D.Fla. March 23, 2012) (finding that $75 per hour is appropriate for clerical work); *Branson v. Harrah's Tunica Corp.*, 2:08 Civ. 02804-BBD, 2011 WL 3678428, *2 (W.D.Tenn. April 19, 2011) report and recommendation adopted, 2:08 Civ. 02804-BBD, 2011 WL 4499323 (W.D.Tenn. 2011) (same).

41.   Under each of these criteria, Getman & Sweeney's billing rates are reasonable rates in this District and the appropriate rates for use in the lodestar calculation.

42.   Class Counsel's lodestar equals $398,209.50. Getman Dec. ¶ 72. Thus, the $212,854.25 in fees sought by Class Counsel, which is a 46% reduction, is even more reasonable under the lodestar calculation. In addition, no Class Member objected to Class Counsel's fee request.

43.   Public policy also weighs in favor of awarding Class Counsel's attorneys' fees.

44.   Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Willix v. Healthfirst, Inc.*, 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011). *citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Id.* If not, wage and hour abuses would go without remedy because few if any attorneys would be willing to take on the risk. *Id., citing Goldberger* 209 F.3d at 51 (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and state wage and hour laws. *Id.*

**AWARD OF COSTS TO CLASS COUNSEL**

45.   It is well-settled in this Circuit that "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998); *see also Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933-34 (2d Cir.1987) ("Identifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable...and are often distinguished from nonrecoverable routine office overhead, which must be absorbed within the attorney's hourly rate."). Thus, courts typically allow counsel to recover their out-of-pocket expenses including filing fees, process service fees, court reporter fees, mediation fees, translator fees, videographer fees, postage and photocopies, that are reasonable and were incidental and necessary to the representation of the Class. *Siler v. Landry's Seafood H. - N. Carolina, Inc.*, 13 Civ. 587 RLE, 2014 WL 2945796, *11 (S.D.N.Y. June 30, 2014) (awarding reimbursement of costs including filing fees, court reporting, postage, photocopies, and electronic research).

46.   Class Counsel expended $9,855.82 in litigation costs to bring the case to conclusion. Getman Dec. ¶ 75. No Class Member objected to Class Counsel's request for costs. Thus, Class Counsel's costs are reasonable and are recoverable.

**CONCLUSION**

47.   This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

48.   Provided that there is no appeal by either party, consistent with the Settlement Agreement and this Order:

  a.   Defendants shall pay the settlement amount in four installments. The first installment shall occur in 35 days, provided that no appeal is filed. The first installment shall be prorated based on the time elapsed between January 22,

2014 and 35 days after the final approval. The second installment shall occur on January 22, 2015. Combined with the first installment, the second installment shall total $133,333.33.The third installment shall occur on January 22, 2016. The third installment shall total $133,333.33.The fourth installment shall occur on January 22, 2017. The fourth installment shall total $133,333.33.

b. All Class Members who returned a claim form by August 1, 2014 to Class Counsel shall receive their settlement share. In order to be equitable in timing and risk of non-payment, the Named Plaintiff, the opt-in Plaintiffs, and each participating Class Member will receive a prorated share of his or her settlement in each installment payment. Each participating Class Member will receive a check or checks with each installment payment. This will equally distribute the risk that participating Class Members will not receive their settlement share because of Defendants' nonpayment (i.e. Defendants go out of business or file for bankruptcy protection) during a later payment.

c. Defendants shall pay Class Counsel's awarded fees and costs on a prorated basis with each installment payment at the times indicated in paragraph (a) above.

d. If Defendants fail to pay any installment by the timeframe provided in the Settlement Agreement, then Class Counsel shall provide notice to Defense Counsel via fax and email and Defendants have 30 days from when notice is provided to cure the payment. If Defendants fail to cure within the 30 days, then all remaining payments are immediately due and interest shall accrue on any unpaid funds due at the rate of 9%. Plaintiffs may take any legal steps to enforce the settlement agreement.

e. Defendants shall write each participating Class Member's check and deliver it to Class Counsel by the deadlines provided in the Settlement Agreement. Defendants shall provide the checks along with check-size double window envelopes, Class Counsel shall then mail, via first class mail, the participating Class Members their checks within seven (7) calendar days of receipt of the checks from Defendants.

f. Class Counsel shall provide defense counsel with the amount each participating Class Member is to receive for each installment.

g. Defendants shall send by electronic transfer the Court-approved payments of attorneys' fees and costs to Class Counsel by the deadlines provided in the Settlement Agreement. Class Counsel shall provide Defendants with wiring instructions and a completed W-9 tax form.

h. Participating Class Members shall have one hundred eighty (180) calendar days after the date of mailing to cash their settlement checks. Any check not cashed within 180 days shall be reissued with the next installment.

     i.   Defendants shall provide Class Counsel with an accounting of all payments tendered, negotiated, and unclaimed, within 200 calendar days after the date of each mailing.

     j.   If any checks are returned as undeliverable, Class Counsel shall update Class Members' last known mailing address through standard skip trace methods available to Class Counsel and will re-send the check to the new address. Defendants shall cooperate with reasonable requests by Class Counsel for information to assist Class Counsel in conducting the skip trace.

     k.   If any participating Class Member does not cash his or her check within 180 days after mailing of the check by Class Counsel and the check is not returned, the check will be void. If any redistributed checks are again returned as undeliverable, the checks will be void.

     l.   If any redistributed checks are not cashed within 180 days after the mailing of the final installment, the checks will be void. In such event, that settlement share will be donated to the National Employment Law Project, in a cy pres distribution.

49.    The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement, as amended, and overseeing the distribution of settlement funds. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this *15* day of August, 2014.

United States Magistrate Judge Lisa M. Smith

22